THE CLARK ESTATE COMPANY, a Corporation, (Plaintiff) Appellant, v. ALONZO H. GENTRY, COMMERCE TRUST COMPANY, a Corporation, ESTHER REYBURN and THE FIRST NATIONAL BANK OF KANSAS CITY, MISSOURI, Co-Executrix and Co-Executor of the Estate of ROSCOE REYBURN, Deceased, (Defendants) Respondents, No. 42284—240 S. W. (2d) 124.

Division One, May 14, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, June 11, 1951.

C. W. Prince, Wm. Dennis Bush and John J. Cosgrove for appellant.

82

*Cooper, Neel, Sutherland & Rogers* and *Wallace Sutherland for* respondent Alonzo H. Gentry, *Hugh M. Hiller* and *Philip J. Close* for respondent Commerce Trust Company.

*Robert L. Jackson* for respondents Esther Reyburn and The First National Bank of Kansas City.

LOZIER, C.—Plaintiff-appellant corporation, the Clark Estate Company, has appealed from an order dismissing, with prejudice and for reasons hereinafter set out, its fourth amended petition. Defendants-respondents are Alonzo H. Gentry, the Commerce Trust Company and Esther Reyburn and the First National Bank of Kansas City, Executors of the Estate of Roscoe Reyburn, deceased.

The issues are: the right of a corporation, the charter of which has been forfeited, to file and maintain a suit in its own name and as a corporation; limitations of actions; and the effect of rescission of the forfeiture.

The dismissed petition alleged conspiracy, misrepresentations and fraud by Gentry, an architect, Reyburn, president of a building corporation, and the trust company in the construction and financing of buildings constructed on the company's property, and claimed damages in the sum of one million dollars. It was alleged that defendants' fraud caused the filing of mechanics' and materialmen's liens proceedings, resulting in a judicial sale on December 18, 1930. Other than the sale, all of the transactions appear to have occurred prior to January 1, 1927.

On January 1, 1927, the company's charter as a domestic corporation was forfeited ██ by the secretary of state for failure to file the annual registration report, financial statement and anti-trust affidavit and for failure to pay the annual registration fee. The forfeiture was affected under the provisions of Sec. 9813, Mo. RS 1919, now, substantially, a part of Sec. 4997.118, Mo. RSA and Sec. 351.525, Mo. RS 1949. This section directs forfeiture of "the corporate rights and privileges" and provides that "whereupon all the powers, privileges and franchises conferred * * * shall subject to rescission as in this article provided, cease and determine," and that the secretary of state shall notify the corporation that "its corporate existence and rights in this state have been forfeited and cancelled, and the corporation dissolved, subject to rescission as in this article provided."

The pertinent provisions relating to the liquidation of the affairs of a Missouri corporation, the charter of which has been forfeited, including rights of suit, are: "When the forfeiture of the certificate, or license, of any corporation has been declared, the officers and directors or the manager, or managers, of the affairs of said corporation, at the time such forfeiture is declared, by whatever name they

may be known in law, shall be trustees of such corporation with full power to settle its affairs and distribute its assets among its stockholders, after paying the debts due and owing by such corporation, and *as such trustees to sue* and recover debts and property due such corporation, and they shall be jointly and severally responsible to the creditors and stockholders of such corporations to the extent of its property and assets that may properly come into their hands." (Italics ours.) Sec. 9816, Mo. RS 1919, now substantially, a part of Sec. 4997.118, Mo. RSA and Sec. 351.525, Mo. RS 1949. See also Sec. 9755, Mo. RS 1919.

On March 6, 1930, there was filed in the circuit court of Jackson County a petition in the caption of which the "Clark Estate Company, a Corporation," was plaintiff. The first paragraph of that petition alleged: "Comes now the plaintiff and for its cause of action states that it is a corporation, organized and existing according to law. * * *" In the captions of the first amended petition, filed February 12, 1934, of the second amended petition, filed April 10, 1934, and of the dismissed petition, filed August 28, 1950 (after the rescission), the company was plaintiff. The first and second amended petitions alleged only that "plaintiff states that it is a corporation." The dismissed petition alleged that "plaintiff is a corporation, duly existing according to law."

In its answer to the second amended petition, filed July 3, 1934, the trust company, after denying generally, alleged that when the original petition was filed the cause was barred by the 5 year statute. It is also alleged that "at the time of the commencement of this action, there was not nor is there now, any such corporation as Clark Estate Company, named as plaintiff herein." Defendants' separate amended answers to the same petition, filed in June, 1935, also consisted of general denials and pleas of limitations. These answers also alleged that plaintiff's charter had been forfeited and cancelled on January 1, 1927, "and said corporation dissolved, and has not been in existence since said last named date, and since last named date, has had no capacity to sue, and that it did not have capacity to institute this suit, * * * and that at the time of the commencement of this action against defendant there was not, nor is there now, any such corporation as the Clark Estate Company named as plaintiff herein."

On January 17, 1946, the secretary of state issued his "Certificate of Rescission of Forfeiture" certifying that the forfeiture entered January 1, 1927, "was this day rescinded, and said corporation restored to good standing on the records of this department." This rescission was under Sec. 4997.120, Mo. RSA now Sec. 351.540, Mo. RS 1949.

Exercise by any person of the corporate powers of a dissolved corporation was and is a misdemeanor. Sec. 9822, Mo. RS 1919,

Sec. 4628, Mo. RS 1929, Sec. 4997.125, Mo. RSA now Sec. 351.530, Mo. RS 1949.

Sec. 9823, Mo. RS 1919, Sec. 4629, Mo. RS 1929, Sec. 4997.126, Mo. RSA now ▮▮▮ Sec. 351.535, Mo. RS 1949, provided: "No corporation shall maintain an action in any court of this state for the collection of bills or accounts payable or for the enforcement of a contract, made while such corporation is in suspension, or after the forfeiture of its certificate, or license, under the provisions of this article, unless it shall have first been reinstated, or the forfeiture entered against it rescinded as in this article provided."

The trial judge assigned these reasons for dismissing the fourth amended petition: that at the time of the filing of the original petition in the name of the corporation as plaintiff, the corporation had no existence de facto or de jure because of the forfeiture of its charter; that at that time the corporation had no power or capacity to institute any action; that the plaintiff corporation was not entitled to exercise any corporate powers or perform any corporate functions between the times of the forfeiture and the rescission of the forfeiture; and that the alleged cause of action accrued to plaintiff corporation more than 5 years prior to the rescission. All of these grounds were urged in the defendants' motions to dismiss.

▮ The company contends that the judgment below was erroneous because based upon a collateral attack upon the validity of the rescission. However, the issue here is not the *validity* of the rescission but its *effect*. See Bradley v. Reppell, 133 Mo. 545, 32 SW 645, 54 Am. St. Rep. 685, and Leibson v. Henry, 356 Mo. 953, 204 SW 2d 310. And contrast Boatmen's Bank v. Gillespie, 209 Mo. 217, 108 SW 74, and Laird v. Pan-American Lmbr. Co., (Mo. App.) 237 SW 1047, both cited by the company.

▮ In view of the clear language of Sec. 9816, Mo. RS 1919, quoted above, we rule that the corporation was not entitled to file this suit. Over 3 years prior to the filing, the corporation had been dissolved, its rights to exercise corporate powers had been forfeited, and its capacity to function as a corporation had been revoked. On the day of the forfeiture, the company's very being as a legal entity was destroyed and from that date the then officers and directors of the dissolved corporation became statutory trustees of its affairs for the purposes stated in the statute. Turner v. Browne, 351 Mo. 541, 173 SW 2d 868; Bruun v. Katz Drug Co., 351 Mo. 731, 173 S. W. 2d 906; and Leibson v. Henry, supra.

Among the statutory rights forfeited was that of suing as a corporation. See Sec. 4997.4, Mo. RSA now Sec. 351.385, Mo. RS 1949. The corporation could no longer sue in its own name. Having no legal entity it could not be a party plaintiff or defendant at law or in equity. The right to assert its claims against these defendants was vested by law exclusively in the trustees. Only they—as such

trustees, in their own names in behalf of the corporation, in their representative capacity—were entitled to institute the action filed on March 6, 1930. They were "necessary parties." See Bruun v. Katz Drug Co., 351 Mo. 731, 173 SW 2d 906; State ex rel. McDowell v. Libby, 238 Mo. App. 36, 175 SW 2d 171; Watkins v. Mayer, (Mo. App.) 103 SW 2d 566; State ex rel. Darr v. A. B. Collins & Co., 34 F. Supp. 550; Arnold v. Streck, 108 F. 2d 387; and Annos. 47 ALR 1288 and 97 ALR 477.

The company argues that it was entitled to bring this suit because of the difference in the wording of the sections prohibiting suits by a domestic corporation the charter of which has been forfeited, and prohibiting suits by a foreign corporation the license of which to operate in Missouri has been cancelled. Sec. 9823, Mo. RS 1919, quoted above, and Sec. 9793, Mo. RS 1919, now Sec. 4997.109 Mo. RSA, and Sec. 351.635, Mo. RS 1949. It is the company's position that a dissolved Missouri corporation may sue in tort, whereas a foreign corporation the license of which has been cancelled may not.

The attempted distinction is not sound. We need not discuss the differences in the powers of the General Assembly relating to the forfeiture of the charter of a Missouri corporation, a creature of this state, and the revocation of the license of a foreign corporation, an entity created under the laws of another state. Suffice to say that the legislature has, in clear, unmistakable terms, declared that *all* suits in behalf of or against a dissolved Missouri corporation must be by and in the name of and against the trustees as such. For obvious reasons, there is no such provision as to suits by a foreign corporation, the license of which has been cancelled.

The company next contends that defendants' dealings with the company before and after forfeiture constituted the company "as to defendants herein, at least a corporation by estoppel." No estoppel could arise out of any dealings with the company as a corporation prior to forfeiture. Until January 1, 1927, it *was* a corporation.

Defendants' "dealings with the company as a corporation" after forfeiture were defendants' answers, demurrers and motions. But defendants' pleadings contained no admission that the plaintiff was a corporation. On the contrary, the company's corporate status was expressly challenged. True, in the caption of each of defendants' pleadings, the cause was entitled and numbered and the defendants were named as in the caption of the particular petition to which defendants' pleading was directed. (The defendants named in the captions of the various petitions were not identical, as the company, from time to time, joined new defendants and dismissed as to others.) Use of the same caption was proper and necessary and did not operate as an estoppel.

Nor was there estoppel because, as argued by the company, "between March 6, 1930, and August 30, 1950, defendants made no effort to bring to trial the issue regarding plaintiff's corporate status or to bring this question to a focus during this interim." Defendants, by their pleadings denying the company's corporate status and by challenging its right to sue, did bring "this question to a focus." As plaintiff, it was the company's obligation, not defendants', to bring to trial all of the issues, including that of the company's corporate status. See Bruun v. Katz Drug Co., 351 Mo. 731, 173 SW 2d 906.

Furthermore, the petition shows on its face that the company was a dissolved corporation when the suit was filed and remained such for 16 years thereafter. The petition set out the forfeiture on January 1, 1927, and the rescission on January 17, 1946. Thus the company, without having pleaded any facts constituting estoppel, is in the unusual position of insisting that the adverse party is estopped to assert the very facts which the company itself had pleaded.

In support of its argument that defendants were estopped to challenge its corporate existence, the company cites 14 C. J., "Corporations," Secs. 251 and 277, pp. 235 and 248, and several Missouri cases: Stoutimore v. Clark, 70 Mo. 471, School Consolidated District No. 10 v. Wilson, 345 Mo. 598, 135 SW 2d 349, and Rialto Co. v. Miner, 183 Mo. App. 119, 166 SW 629. However, in the instant case, all of the transactions of which the company complained appear to have occurred prior to the date of the forfeiture. The initiation of the judicial proceedings resulting in the sale in 1930, and the intervention therein by the defendant trust company, were, so far as the petition shows, prior to January 1, 1927. And neither does the petition recite nor the record contain any facts showing that any of the defendants dealt with company as a corporate entity after the forfeiture of its charter. We rule that the defendants were not estopped to raise the nul tiel corporation issue:

█ We shall assume without deciding that the petition stated a cause of action, that there was no departure, and that the alleged cause accrued on December 18, 1930, the date of the judicial sale, although this was 9 months after the original petition was filed. Upon assumptions most favorable to the company, the cause was barred by the 5 year statute (Sec. 862, Mo. RS 1929, Sec. 1014, Mo. RSA, now Sec. 516.120 Mo. RS 1949) on December 18, 1935. The statutory trustees, the only persons entitled to bring a suit upon the alleged cause, never sued. Nor did they make any effort to be substituted as parties plaintiff in the pending suit, either █ during the 5 years the statute was running or at any time during the next 11 years after the statute had run and before the rescission.

On January 1, 1927, the state terminated the company's rights to exercise corporate powers and dissolved the corporation. The

action of the secretary of state ipso facto dissolved the corporation. Leibson v. Henry, supra. It is not material whether the rights of the company to exercise these powers were "forfeited" or "suspended." See Leibson v. Henry, supra. In either case, the corporation was *nonexistent* for 19 years. The right to sue was nonexistent at the time the suit was filed and was continuously nonexistent until revived or restored by the state, 16 years after the filing.

We have found that the company's right to sue was nonexistent during all these years and that its claim was barred by limitations. The 1946 rescission revived or restored the company's right to sue as a corporation. But what was the effect, if any, of the rescission upon the operation of the statute of limitations?

It is the company's position that the rescission "vested plaintiff with a continuing existence from the origin of the corporation to the day of the" rescission; that "plaintiff has but one charter and one continuous life"; and that the rescission "extinguished and obliterated the forfeiture as effectively as if it had never been made and automatically restored the corporation *ab initio* to the same position as it was prior to the forfeiture; it wiped out the dissolution completely." The company says that the rescission "vested the plaintiff with continuing existence from the date of its origin, and validated all corporate action as effectively as if there had been no forfeiture. All effects and *sequalae* of the temporary cessation were erased. There has been but one corporation, in whose existence there has been no legal hiatus."

We do not agree. The words "rescission," "rescind" and "rescinded" in the statutes above referred to cannot be so interpreted. The rule is that, in the absence of clear legislative intent to the contrary, the effect of statutes is prospective only. 59 C. J., "Statutes," Sec. 694, p. 1169; 50 Am. Jur., "Statutes," Sec. 478, p. 494; Lucas v. Murphy, 348 Mo. 1078, 156 SW 2d 686; and Cleveland v. Laclede-Christy Clay Products Co., (Mo. App.) 113 SW 2d 1065. In only one instance (Sec. 4997.126, Mo. RSA, Sec. 351.535, Mo. RS 1949) has rescission been given a retroactive effect. It is clear that the General Assembly did not intend that restoration of corporate powers, revivor of the right to operate as a corporation, recreation of the corporate legal entity should *wipe out* the period of suspension and legalize the unlawful acts of the dissolved corporation and of its officers and directors.

Carried to its logical conclusion, the company's argument would render void any business activities of the statutory trustees, and legal proceedings involving such trustees, under Sec. 9816, Mo. RS 1919, quoted above. Defendants suggest two apt illustrations: judgments in favor of this company's creditors or stockholders against its statutory trustees; and judgment in favor of these defendants against such trustees upon the merits of the cause involved in the instant

case. See also Poritzky v. Wachtel, 176 Misc. 633, 27 N. Y. S. 2d 316, where the trustee sought to avoid personal liability incurred during suspension by securing a rescission of the forfeiture. Under the company's theory, the defendants-trustees in Leibson v. Henry, supra, could have escaped personal liability by securing rescission.

In Hunter v. Hunter, 361 Mo. 799, 237 SW 2d 100, we held that the removal, by conditional commutation of sentence, of a life convict's disability to sue did not operate to revive a cause barred by limitations. We rule here that the rescission was prospective only and that the company's revived 'right to sue did not relate back to the time of the forfeiture, and did not validate the filing of the suit in 1930 or its maintenance prior to rescission.

The precise limitations question here involved was ruled in Cleveland v. Gore Bros., 14 Cal. App. 2d 681, 58 P. 2d 931, cited by defendants. All of the corporate rights and powers of the corporation, other than a statutory right to *defend* any action, had been suspended in March, 1933. The suspension continued without interruption or revivor until May 10, 1934, when the corporation's rights and powers were revived or restored. The plaintiff-assignee of a lease to the corporation, suing upon a cause accruing prior to suspension, filed suit on July 15, 1933, 4 months after the suspension. In November, 1933, during suspension, defendants pleaded both limitations and the suspension.

The appellate court approved these holdings of the trial court: that plaintiff-assignee was subject to the same incapacities with respect to the commencement and prosecution of the suit as her assignor; that "the revivor and restoration of the said corporate rights, privileges and powers * * * did not have retroactive effect in respect to the commencement and prosecution of said action"; and that "while the said action was pending from the date of the commencement thereof, that is, from the filing of the original complaint on' file in this cause, still, between said last referred to date and the 10th day of May, 1934, the said action did not toll the statute of limitations in respect to the cause of action, if any, stated in plaintiff's complaint and/or first amended complaint on file herein."

This is a correct statement of the law and these principles are controlling here. The company argues that the Cleveland case is inapplicable because there the revived corporation was not substituted as plaintiff. It cites Hall v. Citizens National Trust & Savings Bank, 53 Cal. App. 2d 625, 128 P. 2d 545. However, the Hall case, and other cases cited therein, ruled only the effect of revival of corporate capacity after plea of nul tiel corporation but before trial on the merits. Statutes of limitations were not involved. As pointed out in the Hall case, the action in the Cleveland case "was commenced during the period of suspension; shortly thereafter· the period of the statute of limitations expired; the defendants in their answer pleaded

the suspension of the corporate powers. After the running of the statute and the filing of the answer the corporate powers were revived. The court held that the revival could not be given a retroactive effect so as to permit the filing of the action at a time of incapacity to toll the running of the statute of limitations; it was the intervening fact of the expiration of the statute of limitations that controlled the decision.''

We have studied the many cases from other jurisdictions cited by the company and find them inapplicable. None involved limitations of actions. In Wolfe v. Salkind, 3 N. J. 312, 70 Atl. 2d 72, Dominion Oil Co. v. Lamb, 119 Colo. 62, 201 P. 2d 372, Ferguson Fruit & Land Co. v. Goodding, 44 Idaho 76, 258 P. 557, dealings with the dissolved corporation had created estoppels. In Jarvis v. Chapman Properties, Inc., 110 Fla. 17, 147 So. 860, where suit was filed during suspension but not pressed until after rescission, the court refused to state what its ruling would have been had the other party moved to dismiss the suit prior to rescission. In that case, as in Karnes v. Flint, 153 Wash. 225, 279 P. 728, and McClung v. Hill, 96 F. 2d 236, rescission was had before expiration of the limitations period.

But, the company contends, after rescission the revived corporation became the real party in interest and is now the proper party to maintain the suit. Even so, it did not become such until long after limitations had run against the corporation's claim. (The dissolved corporation which filed the purported suit in its own name was not the real party in interest upon the claim upon which it attempted to sue in 1930. Between the forfeiture and the rescission, not only was the corporation nonexistent but the creditors and stockholders of the dissolved corporation were the real parties in interest upon all of such corporation's claims. Sec. 9816, Mo. RS 1919, quoted above.)

The company filed and thereafter prosecuted the action as an existing corporation. There was no substitution of the revived corporation as a party plaintiff. Even assuming that the filing of the dismissed petition was an attempted substitution of the *revived* corporation, there is no merit in the contention that such substitution had the effect of tolling limitations.

Here the statute had run 11 years before the revived corporation became the ''real party in interest'' and 13 years before the revived corporation was ''substituted.'' As pointed out by defendants, there is no statutory limit upon the time within which rescission of the forfeiture of a corporate charter may be had. To permit the substitution of this revived corporation as party plaintiff after the statute had run against this claim would be contrary to the letter and spirit of our statutes relating to substitution of parties, domestic corporations and limitations of actions. See Daiprai v. Moberly Fuel & Transfer Co., 359 Mo. 789, 223 SW 2d 474.

Sec. 9816, Mo. RS 1919, quoted above, did not toll statutes of limitations against claims of the dissolved corporation upon which the trustees were entitled to sue. 19 CJS, ''Corporations,'' Sec. 1775, p. 1566. Again assuming that the company's claim against these defendants accrued on December 18, 1930, the 5 year statute began to run both in favor of and against the trustees on that date. Had they been substituted as parties plaintiff after limitations had run, they could have successfully invoked the statute against any counterclaims of these defendants. See Bruun v. Katz Drug Co., 359 Mo. 334, 221 SW 2d 717. In Hall v. Lavat, 301 Mo. 675, 257 SW 108, we said that while the trustees could cease to hold adversely before the 10 year statute had run, they could not destroy a title acquired by adverse possession for the statutory period.

The issue is not the company's right, after rescission, to be substituted as party plaintiff in an action brought by the trustees during suspension. Rather, it is the effect of rescission upon the suit unlawfully filed and for 16 years unlawfully maintained in the corporate name. There is a conflict of authority as to the propriety of permitting substitution for a nonexistent plaintiff. See 39 Am. Jur., ''Parties,'' Sec. 98, p. 967; and Anno. 135 ALR 325, 331 and 348. It is our view that insofar as statutes of limitations may be involved, the principles announced in Cleveland v. Gore Bros., supra, should be applied.

The company cites Lilly v. Tobbein, 103 Mo. 477, 15 SW 618, 23 Am. St. Rep. 887. It was there held that an amendment substituting as plaintiffs the individual members of an unincorporated church society, for the society after limitations had run, was proper and that such amendment related back to the commencement of the suit and tolled the statute. It may be noted that those substituted plaintiffs were individuals entitled to bring the suit originally, which the company here was not. So were the substituted plaintiffs in Ward v. Pine, 50 Mo. 38. The substituted plaintiff in Hackett v. Van Frank, 119 Mo. App. 648, 96 SW 247, could have sued initially as an existent corporation, which the company here could not. Substitution for a nonexistent corporation was not involved in any of these cases.

Lilly v. Tobbein, supra, is not applicable. In Landis v. Saxton, 105 Mo. 486, 16 SW 912, we held that statutes of limitations ran against the plaintiff trustee of a defunct corporation. Here those statutes ran against the statutory trustees of the dissolved Clark Estate Company, and were not tolled by the pendency of the company's purported suit or by the rescission of the forfeiture of the company's corporate charter. The claim of the company was barred long before the company, as a revived corporation, even acquired the right to file and prosecute a cause of action thereon.

Finally, the company suggests that this case be remanded to allow plaintiff to substitute the former statutory trustees as plaintiffs.

(While the trustees could and should have been substituted prior to rescission, such substitution now is, or at any time after rescission would have been, improper. In the cases cited by the company, where remand for amendment purposes was ordered, the plaintiff had misconstrued his remedy. Substitution of another plaintiff was not involved.) Here substitution of the trustees would be a useless act—one which would necessarily have to be followed by the substitution of the revived corporation as party plaintiff and dismissal of the petition for the same reasons heretofore assigned by the trial judge and approved in this opinion.

The judgment is affirmed. *Van Osdol* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur except *Hyde, J.,* who concurs in result.