In re Pamela M. BYRD, Debtor,

Pamela M. Byrd, Plaintiff,

v.

Hometown Heating & Air Conditioning, Inc.; Thomas E. Travers; Raymond E. Stuck; Julie Travers; and Brian L. Warr, Defendants.

Bankruptcy No. 96–44313–13.
Adversary No. 98–4149.

United States Bankruptcy Court,
W.D. Missouri.

Jan. 11, 1999.

---

Tracy L. Robinson, Kansas City, MO, for Debtor.

Richard V. Fink, Kansas City, MO, Chapter 13 Trustee.

## MEMORANDUM ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the motion to dismiss the amended complaint filed by the defendants Hometown Heating & Air Conditioning, Inc., d/b/a Quick Service Company ("Hometown"), and Thomas E. Travers, individually. The defendants file their motion pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will deny the motion to dismiss.

The factual background of this case along with the standard that this Court must apply when ruling on a Rule 12(b)(6) motion are fully set out in this Court's Memorandum Order filed on November 23, 1998. In the November 23, 1998 Memorandum Order this Court ruled that Byrd's request for injunctive relief in count III of her original complaint was moot because Hometown actually performed the activity for which injunctive relief was sought, namely reinstating its corporate status after this adversary proceeding had been filed. Hometown had been administratively dissolved by the Missouri Secretary of State on December 7, 1992, for failing to file an annual report. Hometown's activities in entering into a contract with Byrd, accepting a promissory note and deed of trust from Byrd, foreclosing upon the nonresidential real property and purchasing the property at the foreclosure sale all occurred while Hometown was administratively dissolved.

The Court granted Byrd 20 days from the date the November 23, 1998 Memorandum Order was filed in which to amend her adversary complaint to allege a violation of the automatic stay and seek recovery of any damages she may have sustained by Hometown's action in reinstating its corporate status during the pendency of Byrd's bankruptcy. On December 14, 1998, Byrd filed her amended complaint seeking sanctions against Hometown for its violation of the automatic stay. On December 23, 1998, the defendants filed the motion to dismiss presently under consideration.

In their motion to dismiss, the defendants contend that the amended complaint fails to state a cause of action for damages for a violation of the automatic stay. The defendants assert that the reinstatement of the corporate charter of Hometown was not an action against either the debtor or property of the estate. The defendants contend that the property upon which Hometown foreclosed was not property of the estate when Byrd filed for bankruptcy protection because Byrd failed to exercise her statutory redemption rights under Missouri law and, thus, the foreclosure was completed prior to the bankruptcy filing. The defendants also contend that reinstatement of the corporate charter in and of itself was not a benefit to Hometown. In their motion, the defendants do concede that Hometown reinstated its corporate charter "not only to comply with state law but also to

defend itself from claims brought by the Debtor."

The Court does not agree with the defendants' assertions that the act of reinstating the corporate charter was not an act against property of the bankruptcy estate. Section 351.486.3 of the Missouri Revised Statutes states that:

A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under section 351.476 and notify claimants under sections 351.478 and 351.482, and any officer or director who conducts business on behalf of a corporation so dissolved except as provided in this section shall be personally liable for any obligation so incurred.

Mo.Rev.Stat. § 351.486.3 (1991). Section 351.476.1 provides that:

A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

(1) Collecting its assets;

(2) Disposing of its properties that will not be distributed in kind to its shareholders;

(3) Discharging or making provision for discharging its liabilities;

(4) Distributing its remaining property among its shareholders according to their interests; and

(5) Doing every other act necessary to wind up and liquidate its business and affairs.

Mo.Rev.Stat. § 351.476.1 (1991). On the day that Hometown was administratively dissolved, its "very being as a legal entity was destroyed." *See Clark Estate Co. v. Gentry,* 362 Mo. 80, 240 S.W.2d 124, 127 (Mo.1951), *cert. denied,* 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951). Dissolution " 'has been described as that condition of law and fact which ends the capacity of the body corpo-

rate to act as such and necessitates a liquidation and extinguishment of all legal relations existing in respect to the corporate enterprise.' " *Leibson v. Henry,* 356 Mo. 953, 204 S.W.2d 310, 315 (Mo.1947) (citation omitted). "A dissolved corporation may not continue business as a going concern." 16A William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 8116 (perm. ed. rev.vol.1995) (hereinafter "Fletcher on Corporations"). "[I]t is unlawful for persons to exercise corporate powers after a charter has been forfeited." *A.R.D.C., Inc. v. State Farm Fire & Cas. Co.,* 619 S.W.2d 843, 846 (Mo.App.1981). "A conveyance of property by or to a corporation after its dissolution is invalid and unenforceable, unless the corporation is disposing of property for the purpose of winding up and liquidating its business and affairs." 16A Fletcher on Corporations, at § 8137 and n. 1 (citing *White v. Campbell,* 24 Tenn. 38, 5 Hum. 38 (Tenn.1844) ("Where a note secured by a deed of trust is executed to a defunct corporation, not only is the note void for want of a payee, but the deed of trust is also void for want of a beneficiary.")).

Under well-established law, the actions in which Hometown engaged concerning Byrd's real property while it was administratively dissolved, beginning with the initial execution of the contract, promissory note and deed of trust and ending with the purchase of the property at the foreclosure sale, were void. Because its actions were void, it appears that Hometown merely had possession of the property at issue as a result of the foreclosure sale, and that the property was probably property of the bankruptcy estate when Byrd filed her Chapter 13 petition.[1] However, in an effort to validate its prior void acts and, thus, attempt to remove the property from the estate, Hometown reinstated its corporate charter after the bankruptcy filing. The defendants appear to believe that since Hometown reinstated its corporate charter, all is well with their world as Hometown's actions did not constitute a violation of the automatic stay because according to Mo.Rev.

---

1. The Eighth Circuit Bankruptcy Appellate Panel has ruled that a Chapter 13 debtor lacks standing to file adversary proceedings under 11 U.S.C. § 548 seeking to avoid fraudulent transfers, which necessitated the dismissal of counts I and II of Byrd's original complaint. An action by the Chapter 13 Trustee to recover the property is currently pending.

Stat. § 351.488.3 (Supp.1998) "When the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred." The defendants believe that they are unsanctionable because once the corporate charter was reinstated, all of the actions engaged in by Hometown while it was administratively dissolved are now considered to have happened as if the administrative dissolution had never occurred. According to the defendants, there can be no violation of the automatic stay because the property was never property of the estate since Hometown's actions have been retroactively validated.

The defendants here need to remove their rose-colored glasses. "Courts have denied retroactive application of reinstatement if it would encourage fraud or permit a manifest injustice." 16A Fletcher on Corporations, at § 8112.30. Further, the Court would like to direct the parties' attention to *Accurate Constr. Co. v. Washington*, 378 A.2d 681 (D.C.1977). *Accurate Constr. Co.* involved an action for the cancellation of a promissory note and deed of trust executed between an individual and a corporation whose articles of incorporation had been revoked under the statutes of the District of Columbia for failure to file annual reports. The promissory note and deed of trust had been given to secure payment to Accurate Construction for certain improvements to the home. After the initiation of the lawsuit to cancel the note and deed of trust, Accurate Construction was reinstated as a corporation. The trial court ruled that the contract, note and deed of trust executed by the individual were voidable because she was under a court-appointed conservatorship at the time the documents were executed. The trial court also ruled that the documents were void because at the time of their execution Accurate Construction's corporate charter had been revoked and the transactions were not in the nature of winding up the business, and that in this case the reinstatement of the corporate charter did not operate to validate the corporate action.

The appellate court affirmed the trial court on the second ground and did not reach the issue concerning the conservatorship. The court opined:

Upon the proclamation of revocation, the corporation was shorn of all its powers and rights, save those expressly reserved by the statute for the purpose of winding up its affairs (i.e. collecting assets, discharging obligations, and distributing property).

. . . .

Appellants argue, however, that reinstatement of the corporation operated to validate the prior acts. They rest this argument on Section 29–938d(d) which provides:

Upon the issuance of the certificate of reinstatement, the revocation proceedings theretofore taken as to such corporation by proclamation shall be deemed to be annulled, and such corporation shall have such powers, rights, duties, and obligations as it had at the time of the issuance of the proclamation with the same force and effect as to such corporation as if the proclamation had not been issued.

Appellants urge that because the revocation proceedings were "annulled," in the contemplation of the law, they never occurred; therefore, corporate acts undertaken during the period before reinstatement are valid.

This analysis is not without surface plausibility. However, the effect of reinstatement cannot be ascertained solely by reference to this language read in isolation. Because it is fundamentally at odds with the overall purpose and intent of this statutory scheme, we deem appellants' position unsound.

For as one commentator has noted:

It is generally held that reinstatement of a repealed charter relates back to the date of the proclamation of the repealer and validates corporate action taken in the interim, unless under the terms of the statute the delinquent corporation is, during the period of suspension, wholly without power to act or contract and its attempted acts or contracts are entirely void. (Footnote omitted.)

We think this exception characterizes our statute.

The purpose of revocation is obviously to prohibit a corporation from enjoying the privileges of that status when it has failed to perform its resultant responsibilities. Revocation is a disability imposed on a corporation as a penalty. It would deprive the statute of its force and encourage a corporation to default on paying its taxes and fees and filing its annual reports if by subsequent compliance such a corporation could at its convenience completely erase the effects of the penalty.

. . . .

We conclude that [reinstatement is not retroactive] here. There may, of course, be cases where equitable considerations surface as, for example, where it would be unreasonable to charge a corporation with responsibility for revocation of its charter, or where a corporation after revocation might be estopped to deny the validity of its undertakings when dealing with parties unaware of the corporate status. But certainly in this case, where the corporation purported to continue business for a period with full knowledge of the revocation, and thereafter made no effort to have its corporate powers restored until this litigation commenced, appellants cannot successfully argue that the reinstatement of corporate identity retroactively validates their unlawful action.

*Accurate Constr. Co.,* 378 A.2d at 684–85. *See also Poritzky v. Wachtel,* 176 Misc. 633, 27 N.Y.S.2d 316 (N.Y.Sup.1941).

Here, the Court must deny the motion to dismiss because clearly the defendants have failed to show that there is no set of facts that would entitle Byrd to relief. *See McSherry v. Trans World Airlines, Inc.,* 81 F.3d 739, 740 (8th Cir.1996).

### Conclusion

Based on the above discussion, the motion to dismiss the amended complaint filed by Hometown Heating & Air Conditioning, Inc., d/b/a Quick Service Company, and Thomas E. Travers, individually is DENIED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.